1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20

MICHAEL BRIAN DASILVA,

Plaintiff,

v.

PADILLA, et al.,

Defendants.

Case No.: 14-cv-2442-WQH-MDD

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**[ECF No. 37]**

21
22
23
24
25

   This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

14-cv-2442-WQH-MDD

For the reasons set forth herein, the Court **RECOMMENDS** Defendants' Partial Motion to Dismiss be **GRANTED**.

## I. PROCEDURAL HISTORY

### A. Federal Proceedings

Plaintiff Michael Brian Dasilva ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis*. (ECF Nos. 1, 2). Plaintiff filed the operative First Amended Complaint ("FAC") on April 28, 2015, pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 35).

Plaintiff sets forth four interwoven federal claims alleging his constitutional rights were violated when prison personnel: (1) interfered with his access to the courts by withholding his legal mail for twenty-eight days and transferring him in retaliation for filing grievances against them; (2) interfered with his right to petition the government for redress of grievances by refusing to process grievances and retaliating against him for filing grievances; (3) violated his Due Process rights by withholding legal mail, denying law library access, obstructing the grievance process, destroying his property and transferring him; and (4) engaged in retaliatory conduct against him for utilizing the prison grievance process. (*Id*. at 12-16). In his fifth claim, Plaintiff alleges Defendants' conduct also violated California state law, and asks the Court to exercise supplemental jurisdiction over state law claims challenging the same conduct. (*Id*. at 19 ¶ 60). Plaintiff alleges this conduct led to $287.32 worth of missing personal property not being reimbursed and dismissal of his state tort case. (*Id*. at 16).

2

1  On May 12, 2015, Defendants filed a Partial Motion to Dismiss
2  the FAC for Failure to State a Claim.  (ECF No. 37).  On June 1, 2015,
3  Plaintiff filed a Response in Opposition.  (ECF No. 41).  On June 11,
4  2015, Defendants filed a Reply.  (ECF No. 42).

5  **B. State Court Proceedings**

6  Relevant to this Partial Motion to Dismiss is Plaintiff's closed civil
7  state court case No. ECV07335, which proceeded in Imperial County
8  Superior Court.  (ECF No. 35 at 20).  Plaintiff does not describe the
9  dismissed state tort action as a criminal or civil rights case, but rather
10  as a tort action for conversion.  In that action, Plaintiff alleged
11  defendants Lopez and Chavez lost his wedding ring and denied him
12  reimbursement.  (*Id.*).

13  In this action, Plaintiff alleges his withheld legal mail contained a
14  "Motion to Transport Prisoner" that the Superior Court was returning
15  to him to correct and re-file.  (*Id.*).  Plaintiff's tort case was dismissed
16  for failure to appear on June 17, 2013, allegedly because Defendant
17  Erece withheld his legal mail during the time his tort case was pending.
18  (*Id.*).  He alleges his mail was delivered to him on June 18, 2013, the
19  day after his tort case was dismissed.  (*Id.* at ¶¶ 7-8).  Plaintiff does not
20  name Lopez or Chavez as defendants in this action.

21  **II. STATEMENT OF FACTS**

22  **A. Background Facts**

23  All facts are taken from the FAC and are not to be construed as
24  findings by the Court.  Plaintiff claims he exhausted all administrative
25  remedies available to him.  (ECF No. 35 at 20).

3

14-cv-2442-WQH-MDD

On March 12, 2013, while Plaintiff was incarcerated at Centinela State Prison, Defendant Lieutenant Gervin interviewed Plaintiff regarding a Form 602 Appeal ("grievance"). (ECF No. 35 at 1, 5 ¶ 1). Plaintiff alleges Gervin was "extremely abrasive, hostile, and derogatory." (*Id.*). Plaintiff claims Gervin belittled him. (*Id.* ¶ 2). Plaintiff said "Whatever dude," to which Gervin responded "Aren't you a disrespectful little bitch." (*Id.*). A verbal altercation followed and the interview was terminated. (*Id.*).

Plaintiff met with Defendant Assistant Warden Calderon after the incident and reported Gervin's behavior. (*Id.* ¶ 3). Calderon expressed concern about Gervin's behavior and told Plaintiff he would handle the matter. (*Id.* ¶ 4). On March 18, 2013, Plaintiff received notice Gervin cancelled his grievance. (*Id.* ¶ 5). Plaintiff alleges the cancellation notice states Gervin cancelled his grievance because of Plaintiff's behavior during the interview. (*Id.*). Plaintiff claims Gervin also filed a false report against him. (*Id.*). Plaintiff alleges Gervin took these actions "to dissuade Plaintiff from further using the grievance process." (*Id.* at 13 ¶ 40).

Plaintiff spoke with Calderon two more times regarding Gervin's conduct. (*Id.* at 5-6 ¶ 6). Additionally, Plaintiff filed a Form 22 Request for Interview ("Form 22") and another grievance. (*Id.*).

Plaintiff claims that between May 21 and June 18, 2013, Defendants Erece and a Centinela State Prison mail room employee John Doe withheld Plaintiff's legal mail concerning the tort case Plaintiff had pending in Imperial County Superior Court. (*Id.* at 6 ¶ 7).

4

Plaintiff claims the withholding of his legal mail caused him to miss his court appearance on June 17, 2013, which resulted in an adverse judgment against him.  (*Id*. ¶ 8).

During the same time period, Plaintiff claims he had "Priority Library Use Status," because his state tort case was pending.[1]  (*Id*. ¶ 9). Plaintiff alleges that between May 17 and May 30, 2013, Defendant Padilla refused to allow him access to the prison law library.  (*Id*. ¶ 10). On May 24, 2013, Plaintiff refused to return his morning food tray to Padilla until Plaintiff spoke with his supervisor.  (*Id*. at 7 ¶ 11).  Padilla refused and told Plaintiff to "Keep the f—ing tray."  (*Id*.).  Plaintiff claims this incident occurred two more times with no supervisor being notified.  (*Id*. ¶ 12).

On May 29, 2013, Plaintiff refused to return his "Hand Isolation Devices."[2]  (*Id*. ¶ 13).  Defendant Captain Greenwood was notified and he asked Plaintiff to identify the officer who let him keep his food tray because it posed a security risk.  (*Id*. ¶ 14).  Plaintiff identified Padilla. (*Id*. ¶ 15).  Plaintiff was transferred to a different cell and placed on

---

[1] Priority Library Use Status permits inmates with impending court deadlines an additional two hours of library use a week as opposed to the normally permitted single two hour session per week.  (ECF Nos. 35 at ¶ 9; 37 at 8 n.1).

[2] Defendants explain "[a] Hand Isolation Device is used to restrict an inmate's ability to use his hands and must be approved by the Chief Deputy Warden or Warden.  This device may be used when an inmate is on Contraband Surveillance Watch.  DOM § 52050.23.4."  (ECF No. 37 at 8 n.2).

14-cv-2442-WQH-MDD

1  "Management Cell Status."[3]  (*Id.* at 8 ¶ 16).  Plaintiff alleges he received

2  no mail, clothing, bedding or hygiene supplies except a single sheet and

3  pair of boxers during the seven days he remained on Management Cell

4  Status.  (*Id.* ¶ 17).

5  On May 30, 2013, Plaintiff asked Defendant Ruiz for his mail.  (*Id.*

6  ¶ 18).  Ruiz told Plaintiff that his supervisors had prohibited Plaintiff

7  from receiving mail.  (*Id.*).  Plaintiff alleges he advised Ruiz of the

8  illegality of the prohibition and Ruiz called Defendant Sergeant Rivas to

9  talk to Plaintiff.  (*Id.*).  Rivas informed Plaintiff that although it was

10  against prison policy to withhold mail, Defendants Lieutenant Sais and

11  Captain Greenwood had specifically ordered it withheld from Plaintiff.

12  (*Id.* ¶ 19).  Plaintiff claims the withheld legal mail included Superior

13  Court documents necessary to the prosecution of his tort action.  (*Id.* ¶

14  20).

15  On June 7, 2013, Plaintiff received back his confiscated personal

16  property.  (*Id.* ¶ 21).  Plaintiff alleges Padilla searched his property and

17  stored his possessions while they were confiscated.  (*Id.*).  Plaintiff

18  claims personal documents and artwork were missing.  (*Id.* at 8-9 ¶ 21).

19  Plaintiff claims Padilla said he had destroyed the property "for ratting

20  me off."  (*Id.*).

21  In response, Plaintiff filed a Form 22, which he claims Padilla

22  signed and dated.  (*Id.* at 9 ¶ 22).  Plaintiff alleges Padilla admitted to

23

24  [3] Defendants explain "[m]anagement Cell Status is for an inmate who
   persists in unduly disruptive, destructive, or dangerous behavior and

25  who will not heed or respond to orders and warnings to desist from such
   activity.  Cal. Code Regs. tit. 15, § 3332(f)."  (ECF No. 37 at 8 at n.3).

14-cv-2442-WQH-MDD

1  destroying his property.  (*Id.*).  Plaintiff claims such conduct not only

2  violates prison policy but also state and federal law.  (*Id.*).  Plaintiff

3  asserts he continued to file grievances against Centinela State Prison

4  "supervisory staff, policies and harassments" between June and

5  September 2013.  (*Id.* ¶ 23).

6       On September 5, 2013, a Classification Committee comprised of

7  Defendants Greenwood, Sais and Warden Amy Miller placed Plaintiff

8  for transfer.  (*Id.* ¶ 24).  Plaintiff claims he came before the Committee

9  every six months since 2010, and had always been retained at Centinela

10  due to pending state court proceedings and disciplinary adjudications.

11  (*Id.* at 9-10 ¶ 25).  Plaintiff alleges the Committee's decision to transfer

12  him came two weeks prior to his arraignment date in Imperial County

13  Superior Court.  (*Id.*).

14       Plaintiff claims the only difference between the prior Committee

15  decisions and the one resulting in his transfer was his repeated filings

16  of Form 22's and grievances against supervisory staff, including

17  Greenwood and Sais.  (*Id.* at 10 ¶ 26).  Plaintiff alleges the decision to

18  transfer him was upheld despite his protest that the transfer would

19  jeopardize the effectiveness of his self-representation in a criminal

20  proceeding in state court due to a twelve-hour round trip commute

21  between the courthouse and new prison, and the increased possibility of

22  missing or delayed legal materials.  (*Id.* ¶ 27).

23       On October 15, 2013, Plaintiff was transferred to Tehachapi State

24  Prison's Special Housing Unit.  (*Id.* ¶ 28).  Plaintiff claims prison staff

25  failed to properly transfer his personal property resulting in a loss he

7

values at $287.32.  (*Id.*).  Plaintiff does not indicate whether this estimate includes the value of the lost wedding ring which was the object of his dismissed state court case.

Plaintiff alleges he filed grievances over his missing property.  (*Id.* at 10-11 ¶ 29).  He claims Defendants Sergeant Dominguez and Associate Warden Calderon "lied on reports, made false allegations, ignored all the facts, and denied Plaintiff's grievances."  (*Id.*).  Plaintiff claims Dominguez and Calderon's conduct was retaliation for his filing grievances against them.  (*Id.* at 11).  Plaintiff further alleges Dominguez filed a false report against him on September 4, 2013.  (*Id.* ¶ 30).  Plaintiff was later acquitted of the allegations in the report filed by Dominguez.  (*Id.*).

Plaintiff asserts he was transported between prison and Imperial County Superior Court twice for criminal proceedings.  (*Id.* ¶ 31). Plaintiff claims he was transported wearing Hand Isolation Devices "coupled with a black box," and waist chains.  (*Id.*).  Plaintiff alleges using these devices in conjunction with each other during transport is not permitted.  (*Id.*).  Plaintiff claims these devices caused him such discomfort that it forced him to stop defending himself in court to avoid "this tortuous procedure."  (*Id.*).

After his transfer to Tehachapi State Prison, Plaintiff alleges a Centinela State Prison mail room employee John Doe once again withheld his mail for three months between December 2, 2013, and February 22, 2014.  (*Id.* ¶ 32).  Plaintiff does not specify whether this

1  was the same Centinela State Prison mail room employee John Doe who
2  had previously withheld Plaintiff's mail.

## III. LEGAL STANDARD

4  "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."
5  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "Under Federal
6  Rule of Civil Procedure 8(a)(2), a pleading must contain a short and
7  plain statement of the claim showing that the pleader is entitled to
8  relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal
9  quotations omitted).  The pleader must provide the Court with "more
10 than an un-adorned, the-defendant-unlawfully-harmed-me accusation."
11 *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
12 555 (2007)).  "Threadbare recitals of the elements of a cause of action,
13 supported by mere conclusory statements will not suffice."  *Iqbal*, 556
14 U.S. at 678.  "Although for the purposes of a motion to dismiss [a court]
15 must take all of the factual allegations in the complaint as true, [a court
16 is] not bound to accept as true a legal conclusion couched as a factual
17 allegation."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

18 On a defendant's motion to dismiss for failure to state a claim, a
19 *pro se* pleading is construed liberally.  *Thompson v. Davis*, 295 F.3d 890,
20 895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty.*, 88 F.3d 804, 807
21 (9th Cir. 1996)).  The *pro se* pleader must still set out facts in his
22 complaint that bring his claims "across the line from conceivable to
23 plausible."  *Twombly*, 550 U.S. at 570.  A court "may not supply
24 essential elements of the claim that were not initially pled."  *Ivey v. Bd.
25 of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).

14-cv-2442-WQH-MDD

# IV. DISCUSSION

## A. Claims at Issue

### 1. Claim One: Access to the Courts

Defendants challenge Plaintiff's first claim against Defendants Erece, Greenwood, Miller, Rivas, Ruiz and Sais for denial of access to the courts arising out of the withholding of Plaintiff's legal mail which resulted in the dismissal of Plaintiff's state court civil case.  Defendants do not challenge Plaintiff's claims of retaliation against Defendants Greenwood, Miller and Sais arising out of his prison transfer.

### 2. Claim Two: Right to Petition the Government for Redress of Grievances

Defendants challenge Plaintiff's second claim only as it relates to the retaliatory conduct alleged against Defendant Gervin arising out of the interview.  Defendants do not challenge the remaining allegations against Defendants Calderon, Dominguez, Greenwood, Miller, Padilla, Rivas and Sais arising out of their retaliatory interference with the prison grievance process against Plaintiff for his filing grievances against them.

### 3. Claim Three: Due Process

Defendants challenge Plaintiff's third claim for denial of Due Process against Defendants Calderon, Dominguez, Gervin, Miller, Padilla, and Sais arising out of the denial of law library access, interference with the grievance process, prison transfer and property deprivation.  Defendants do not challenge Plaintiff's claims against

Defendants Erece, Greenwood, Rivas, Ruiz and Sais for denial of Due Process arising from the withholding of his legal mail.

### 4. Claim Four: Retaliation

Defendants challenge Plaintiff's fourth claim for retaliation against Defendant Gervin only.  Defendants do not challenge Plaintiff's claims against Defendants Calderon, Dominguez, Erece, Greenwood, Miller, Padilla, Rivas and Sais for retaliatory conduct arising from the destruction of his property, prison transfer, withholding mail or interfering with the prison grievance process.

### 5. Claim Five: State Law Claims

Defendants do not challenge Plaintiff's fifth claim requesting the Court exercise supplemental jurisdiction over related state law claims.

### B. Claim One: Access to Courts

Plaintiff alleges Defendants Erece, Greenwood, Rivas, Ruiz, and Sais withheld his legal mail and thereby denied Plaintiff access to the courts.  (ECF No. 35 at 12 ¶¶ 34-37).  Plaintiff claims his mail being withheld resulted in the dismissal of his pending state court tort case.  (*Id*.).  Plaintiff also alleges Defendants Greenwood, Miller and Sais transferred him in retaliation prior to his criminal proceedings in Superior Court.  (*Id*.).  Defendants do not challenge Plaintiff's retaliation claim arising from his transfer.  (ECF No. 37 at 12 n.4).

Defendants argue Plaintiff fails to state a claim he was denied access to the courts by the withholding of his legal mail.  (*Id*. at 14).  Defendants contend Plaintiff fails to plead the withholding of legal mail

14-cv-2442-WQH-MDD

interfered with a pending criminal appeal, habeas corpus petition or civil rights action, and therefore Plaintiff's claim fails.  (*Id*.).

A plaintiff must allege two elements to plead a civil rights violation under 42 U.S.C. § 1983: (1) violation of a right secured by the Constitution and United States law; and (2) a person acting under color of state law committed the violation.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The First Amendment guarantees a prison inmate a limited right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  Likewise, the First Amendment guarantees a prisoner a limited right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009).  Both rights are restricted in the prison context.

A prisoner's right to send and receive mail is attenuated by the prison's competing right to adopt regulations and policies "reasonably related to legitimate penological interests," including "security, order, and rehabilitation."  *Whitherow*, 52 F.3d at 265 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) and *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)).

A prisoner's right of access to the courts is similarly limited.  *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  *Lewis* imposed an actual injury requirement on prisoners claiming denial of access to the courts.  *Id*.  Actual injury must be alleged for any access to the courts claim because it is a jurisdictional requirement giving the plaintiff standing to bring suit.  *Nevada Dep't. of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th

Cir. 2011).  A prisoner cannot satisfy the injury requirement with "any type of frustrated legal claim."  *Id.*  A plaintiff pleading denial of access to the courts must allege interference with a direct criminal appeal, habeas corpus petition or civil rights action.  *Lewis*, 518 U.S. at 354-56.

The Ninth Circuit addressed claims similar to Plaintiff's, where a prisoner's pending state civil litigation was dismissed for failure to appear due to lack of transport to the courthouse from the facility in which he was incarcerated.  *See Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156 (9th Cir. 2003).  Following *Lewis*, *Simmons* held that the prisoner had not stated a cognizable injury.  *Id.* at 1160.

Plaintiff fails to plead an actual injury under *Lewis*.  Plaintiff alleges Defendants Erece, Greenwood, Rivas, Ruiz and Sais withheld his legal mail resulting in dismissal of his pending state tort case.  (ECF No. 35 at 6 ¶¶ 7-8; 8 ¶¶ 18-19).  Plaintiff does not claim his dismissed tort case was a criminal appeal, habeas corpus petition or a civil rights action.  The Court cannot supply the missing essential allegation.  *Ivey*, 673 F.2d at 268.

Plaintiff's opposition cites multiple cases which hold that once a prisoner has filed a civil action in state court prison officials may not interfere with the prisoner's prosecution of that action.  (ECF No. 41 at 2-3).  The cases Plaintiff relies on are all out-of-circuit decisions and all except one pre-date *Lewis*, and therefore his argument fails.

Because Plaintiff fails to allege a legally cognizable injury resulting from interference with a pending criminal appeal, habeas corpus petition or civil rights case, his claim of denial of access to the

14-cv-2442-WQH-MDD

1    courts fails to the extent it is based on the grounds that interference

2    with his legal mail caused the dismissal of his tort case.  *Lewis*, 518

3    U.S. at 354.

4        Accordingly, the Court **RECOMMENDS** Plaintiff's claim of denial

5    of access to the courts against Defendants Erece, Greenwood, Rivas,

6    Ruiz and Sais arising out the withholding of Plaintiff's legal mail be

7    **DISMISSED**.  Plaintiff's claims against Defendants Greenwood, Miller

8    and Sais arising out of the retaliatory transfer survive this Partial

9    Motion to Dismiss because Defendants do not challenge this basis for

10   this claim.

11   **C. Claim Two: Right to Petition the Government for**

12   **Redress of Grievances and Claim Four: Retaliation**

13       In his second and fourth causes of action, Plaintiff alleges

14   Defendant Gervin engaged in retaliatory conduct against him and

15   interfered with his right to petition the courts for redress of grievances.

16   (ECF No. 35 at 18 ¶¶ 40, 50).  Plaintiff alleges Gervin filed a false

17   report against him and verbally abused him during his interview.  (*Id*.

18   at 18 ¶ 59).  Plaintiff claims Gervin's retaliatory conduct was to

19   dissuade him from using the grievance process.  (*Id*. at 13 ¶ 40).

20   Defendants challenge Plaintiff's second and fourth claims only as to the

21   allegations of retaliatory conduct against Defendant Gervin.[4]  (ECF No.

22   37 at 14).

23

24   _____

25   [4] Defendants do not challenge Plaintiff's claims against Defendants
     Calderon, Dominguez, Erece, Greenwood, Miller, Padilla, Rivas and
     Sais for retaliatory conduct arising from the destruction of his property,

14-cv-2442-WQH-MDD

Defendants argue Plaintiff fails to state a claim against Gervin for retaliation and fails to sufficiently allege he was engaged in protected conduct giving rise to a retaliation claim against Gervin. (ECF No. 37 at 15).

"In the First Amendment context . . . a prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological interests of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prisoners retain the right to file prison grievances and pursue civil rights litigation. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) *amended on other grounds by Rhodes v. Robinson,* 408 F.3d 559 (9th Cir. 2005) (*reh'g denied*). "Deliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983." *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

A plaintiff must plead five basic elements to state a claim for retaliation under § 1983:

> (1) a state actor took an adverse action against him (2) because of (3) the prisoner's protected conduct, and that the action taken against him (4) chilled the prisoner's exercise of his First Amendment Rights and (5) did not reasonably advance a legitimate correctional goal.

*Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011) (quoting *Rhodes*, 408 F.3d at 567).

---

prison transfer, withholding mail or interfering with the prison grievance process.

15

1    Plaintiff adequately alleges Gervin is both a state actor and took
2    adverse action against him, and that he did so to dissuade Plaintiff from
3    exercising his First Amendment rights.  (ECF No. 35 at 5 ¶¶ 1, 5; 13 ¶
4    40; 18 ¶ 60).  Plaintiff fails to allege, however, that Gervin's conduct did
5    not reasonably advance a legitimate correctional goal.  Because Plaintiff
6    fails to allege this essential element, his retaliation claim fails.

7    Plaintiff offers a declaration with additional allegations in his
8    opposition.  (ECF No. 41).  The Court cannot consider the declaration as
9    complaint allegations, but can consider the declaration in deciding
10   whether leave to amend should be granted.  *Broam v. Bogan*, 320 F.3d
11   1023, 1026 n.2 (9th Cir. 2003).  The declaration fails to cure the
12   aforementioned deficiency.  (ECF No. 41).  While Plaintiff reiterates
13   that Gervin's conduct was retaliatory and undertaken to discourage him
14   from using the grievance process, he again fails to allege that Gervin's
15   conduct did not advance a legitimate correctional goal.  (*Id.* at 5-7).

16   Accordingly, the Court **RECOMMENDS** Plaintiff's second and
17   fourth causes of action be **DISMISSED** as to Defendant Gervin.
18   Plaintiff's retaliation and right to petition the government for redress of
19   grievances claims against Defendants Calderon, Dominguez, Erece,
20   Greenwood, Miller, Padilla, Rivas and Sais survive this Partial Motion
21   to Dismiss because Defendants do not challenge these claims against
22   these Defendants.

23   **D. Claim Three: Due Process**

24   In his third claim, Plaintiff alleges Defendant Padilla denied him
25   access to the prison law library, failed to notify supervisors of his

16

1  grievances and destroyed Plaintiff's property in retaliation for

2  exercising his First and Fourteenth Amendment rights.  (ECF No. 35 at

3  ¶ 46).  Plaintiff also asserts Defendants Calderon, Dominguez and

4  Gervin violated his Due Process rights by cancelling and denying his

5  grievances.  (*Id.* ¶¶ 47-49).  Plaintiff further alleges Defendants

6  Greenwood, Miller and Sais transferred him prior to his criminal

7  proceedings, thereby violating his Due Process rights.  (*Id.* at 16 ¶ 51).

8          Defendants argue Plaintiff's Due Process claim fails as a matter of

9  law because he fails to plead a liberty interest in either the prison

10  grievance process or in his prison transfer.  (ECF No. 37 at 15).

11  Defendants further argue Plaintiff cannot state a Due Process claim for

12  lost property under § 1983.  (*Id.*).

13          "[The] range of interests protected by procedural due process is

14  not infinite . . . . Due Process is required only when a decision of the

15  State implicates an interest within the protection of the Fourteenth

16  Amendment."  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (citing *Bd.*

17  *of Regents v. Roth*, 408 U.S. 564, 570 (1972)).  A prisoner "has no

18  legitimate claim of entitlement to a grievance procedure."  *Mann v.*

19  *Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (*reh'g denied*).

20          **1. Prison Law Library Access**

21          Plaintiff claims denial of prison law library access as part of his

22  third claim for violation of his Due Process rights.  (ECF No. 35 at 15 ¶

23  46).  Plaintiff alleges Defendant Padilla denied him Due Process by

24  refusing to grant him prison law library access while his state tort case

25  was pending.  (ECF No. 35 at 15 ¶ 46).  Defendants argue that Plaintiff

17

fails to plead actual injury arising from the denial of access to the prison law library and therefore Plaintiff's claim fails.  (ECF No. 37 at 12).

The affirmative protections of the Fourteenth Amendment do not extend beyond the ability of a prisoner to file a petition or complaint. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).  The right to access the courts "guarantees no particular methodology but rather a conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518 U.S. at 356.

Prisoners do not have a constitutional guarantee to unlimited law library access.  *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985).  Prison officials have discretion in choosing how to regulate the time, manner and place in which a law library can be used. *Id.*  Prisons are only required to provide law library access that meets minimum constitutional standards.  *Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) *overruled on other grounds by Silva v. Di Vittorio*, 658 F.3d 1090 (9th Cir. 2011).

A plaintiff must satisfy two essential elements to establish a constitutional violation arising from denial of law library access:

> First, he must show that the access was so limited as to be unreasonable.  Second, he must show that the inadequate access caused him actual injury, *i.e.*, show a "specific instance in which [he] was actually denied access to the courts."

14-cv-2442-WQH-MDD

*Vandelft v. Moses*, 31 F.3d 794, 797 (9th Cir. 1994) (internal citations omitted).  As explained earlier, *Lewis* further defined "actual injury" to mean interference with a prisoner's ability to bring a direct criminal appeal, habeas corpus petition or civil rights action.  *Id*. at 354-356.

Plaintiff alleges Defendant Padilla denied him law library access although Plaintiff had "Priority Library User" status due to his pending state tort case.  (ECF No. 35 at 6 ¶¶ 9, 10).  Plaintiff alleges this status gave him an extra two hours of library time per week above the minimum two hours afforded to inmates.  (*Id*. at ¶ 9).  Plaintiff claims he made daily attempts to gain library access from May 17, 2013, to May 24, 2013.  (*Id*. at 7-8 ¶¶ 10, 11).  On May 29, 2013, Plaintiff was placed on "Management Cell Status" because he had kept his thermal trays and Hand Isolation Devices in attempts to attract supervisor attention.  (*Id*. ¶¶ 11-16).  Plaintiff claims Defendant Greenwood "promptly" rectified his library access issues when he was notified.  (*Id*. ¶ 14).

Plaintiff fails to state a claim for denial of access to the courts arising out of the denial of law library access.  Plaintiff makes no showing of how the denial of access was unreasonable beyond alleging he was denied access during his Priority Library Use status.  Plaintiff does not allege how the denial of access to the prison law library affected his state tort case.  Plaintiff also does not allege the denial of access prevented him from filing a challenge to his conviction or conditions of his confinement.  Rather, Plaintiff alleges he was not allowed to make use of extra allotted time under prison rules.  Such an

19

1    allegation is insufficient to state a claim for denial of access to the

2    courts.  A prisoner's ability to file challenges to his conviction or

3    conditions of confinement is the touchstone of his constitutional right to

4    access the courts not his ability to turn pages in a prison law library.

5    *Lewis*, 518 U.S. at 356-357.  Plaintiff's claim fails because he neither

6    shows that the denial of library access was unreasonable nor pleads an

7    actual injury to a challenge to his conviction or conditions of

8    confinement.

9         Accordingly, the Court **RECOMMENDS** Defendants' Partial

10   Motion to Dismiss Plaintiff's third claim for denial of Due Process

11   against Defendant Padilla arising from the denial of prison library

12   access be **GRANTED**.  Plaintiff's claims of retaliation against Padilla

13   for destroying his property survive this Partial Motion to Dismiss

14   because Defendants do not challenge this claim on this basis.

15                        **2. Grievance Process**

16        Plaintiff alleges Defendants Calderon, Dominguez, Gervin and

17   Padilla violated his Due Process rights by failing to notify supervisors of

18   grievances, and by denying and cancelling his grievances.  (ECF No. 35

19   at 15 ¶¶ 46, 48, 49).  Defendants argue Plaintiff's claims fail as a matter

20   of law because Plaintiff does not have a constitutionally recognized

21   liberty interest in the prison grievance process.  (ECF No. 37 at 12).

22        It is well established that state prisoners do not have a recognized

23   liberty interest in prison grievance procedures.  S*ee Ramirez v. Galaza*,

24   334 F.3d 850, 860 (9th Cir. 2003) (holding failure of prison officials to

25   properly implement administrative appeals process in the prison does

14-cv-2442-WQH-MDD

1    not give rise to constitutional concerns); *Mann*, 855 F.2d at 640 (stating
2    a prisoner has "no legitimate claim of entitlement to a grievance
3    procedure" thus no protected liberty interest exits).

4           Plaintiff's claim fails as a matter of law because he does not have
5    a protected liberty interest in the prison grievance process. *Id*.
6    Accordingly, the Court **RECOMMENDS** Defendants' Partial Motion to
7    Dismiss Plaintiff's third claim for violation of Due Process against
8    Defendants Padilla, Gervin, Calderon and Dominguez be **GRANTED** to
9    the extent it rests on the denial and cancellation of his grievances.

### 3. Transfer

11          Plaintiff alleges Defendants Greenwood, Miller and Sais violated
12   his Due Process rights by transferring him to Tehachapi State Prison.
13   (ECF No. 35 at 16 ¶ 51).  Defendants argue Plaintiff does not have a
14   liberty interest in avoiding transfer to another prison and therefore
15   cannot state a claim for denial of Due Process.  (ECF No. 37 at 16).

16          Prisoners do not have a liberty interest in remaining at a
17   particular prison because Due Process does not protect prisoners from
18   transfer between prisons.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).
19   A prisoner has no reasonable expectation he will serve his entire
20   sentence at the same prison.  *Olim v. Wakinekona*, 461 U.S. 238, 248
21   (1983).  Plaintiff therefore fails to state a claim that his prison transfer
22   violated his Due Process rights.

23          Accordingly, the Court **RECOMMENDS** Defendants' Partial
24   Motion to Dismiss Defendants Greenwood, Miller and Sais be
25   **GRANTED** as to Plaintiff's Due Process claims against them arising

21

14-cv-2442-WQH-MDD

1   from his prison transfer.  Plaintiff's retaliation claims against

2   Defendants Greenwood, Miller and Sais arising out of his transfer

3   survive this Partial Motion to Dismiss because Defendants do not

4   challenge this claim on this basis.

5                  **4. Property Deprivation**

6        Plaintiff alleges Defendant Padilla deprived him of his personal

7   property without Due Process.  (ECF No. 35 at 15 ¶ 46).  Plaintiff does

8   not allege Padilla was authorized to do so, but does allege Padilla's

9   conduct was intentional.  (*Id.* at 8-9 ¶ 21).  Plaintiff does not allege

10   California state remedies are inadequate or unavailable.

11      "[A]n unauthorized intentional deprivation of property by a state

12   employee does not constitute a violation of the procedural requirements

13   of the Due Process Clause [] if a meaningful postdeprivation remedy for

14   the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see*

15   *Hendon v. Ramsey*, 528 F.Supp. 2d 1058, 1067 (9th Cir. 2007).  A state

16   can cure an otherwise unconstitutional property deprivation by

17   providing an adequate postdeprivation remedy.  *Zimmerman v. City of*

18   *Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).  California provides a

19   remedial scheme for property deprivations committed by state

20   employees.  *Barnett v. Centoni*, 31 F.3d 813, 816-817 (9th Cir. 1994).

21   The California Tort Claims Act is "an adequate post-deprivation

22   remedy." *Id.*; *see* CAL. GOV. CODE §§ 810-895.  The possibility "[a

23   prisoner] might not be able to recover under these remedies the full

24   amount which he might receive in a § 1983 action is not . . .

25

14-cv-2442-WQH-MDD

1   determinative of the adequacy of the state remedies." *Hudson*, 468 U.S.
2   at 535.

3        Plaintiff fails to state a claim for deprivation of Due Process under
4   § 1983 arising from Padilla's destruction of his personal property.
5   *Hudson*, 468 U.S. at 533.  Plaintiff's appropriate remedy for the loss of
6   the property lies in a state proceeding pursuant to the California Tort
7   Claims Act. CAL. GOV. CODE §§ 810-895; *Barnett,* 31 F.3d at 816-817;
8   *Manson, Iver & York v. Black*, 176 Cal. App. 4th 36, 42 (2009); *Talley v.*
9   *Valuation Counselors Grp., Inc.*, 191 Cal. App. 4th 132, 146 (2010).

10        Plaintiff may pursue redress for his previously dismissed state
11   court case No. ECV70335 through filing a motion in California court to
12   set aside the judgment.  CAL. CODE CIV. PROC. § 473(b); *Manson*, 176
13   Cal. App. 4th at 42; *Talley*, 191 Cal. App. 4th at 146.  Because Plaintiff's
14   remedies lie in California law, he should pursue those remedies "in
15   state court rather than seeking a remedy under section 1983 in federal
16   court." *Smith v. Cnty. of Santa Cruz*, No. 13-cv-00595, 2014 U.S. Dist.
17   LEXIS 101054, at *n.10, 2014 WL 3615492 (N.D. Cal. July 22, 2014).

18        Accordingly, the Court **RECOMMENDS** Defendants' Partial
19   Motion to Dismiss Plaintiff's Due Process claim arising from the
20   deprivation of his property by Defendant Padilla be **DISMISSED**.
21   Plaintiff's retaliation claim against Defendant Padilla arising out of his
22   property deprivation survives this Partial Motion to Dismiss because
23   Defendants do not challenge this claim on this basis.
24   / /
25   / /

14-cv-2442-WQH-MDD

1    **D. QUALIFIED IMMUNITY**

2    Plaintiff alleges violations of his First and Fourteenth

3    Amendment rights in claims one and three.  (ECF No. 35).  Defendants

4    raise qualified immunity as an alternative basis for dismissal of claims

5    one and three.  (ECF No. 37 at 17).

6    Qualified immunity shields government employees from personal

7    liability when sued in their individual capacities for acts committed in

8    the course of their official duties.  *Cmty. House, Inc. v. City of Boise*, 623

9    F.3d 945, 964 (9th Cir. 2010).  "A government official sued under § 1983

10   is entitled to qualified immunity unless the official violated a statutory

11   or constitutional right that was clearly established at the time of the

12   challenged conduct."  *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014).

13   Qualified immunity is a two pronged inquiry: (1) did the defendant's

14   actions violate the plaintiff's constitutional rights; and (2) if so, were the

15   constitutional rights violated by the defendant's conduct clearly

16   established at the time of the violation.  *Saucier v. Katz*, 533 U.S. 194,

17   201 (2001).  The sequence prescribed in *Saucier* is not mandatory; a

18   court has discretion which question to resolve first.  *Pearson v.*

19   *Callahan*, 555 U.S. 223, 236 (2009).  A "clearly established right" is one

20   that is sufficiently clear so that a reasonable officer would know that his

21   conduct would violate that right.  *Carroll*, 135 S.Ct. at 350 (citing

22   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "[E]xisting precedent

23   must have placed the statutory or constitutional question beyond

24   debate."  *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).  If a plaintiff

25   fails to satisfy both prongs then qualified immunity attaches to the

24

1  defendant official.  *Saucier*, 533 U.S. at 201.  The inquiry goes no

2  further if a court determines no constitutional right was violated.

3  *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007).

4       Defendants are entitled to qualified immunity on claims one and

5  three to the extent those claims are based on denial of access the courts,

6  interference with the grievance process and the prison transfer.

7  Plaintiff does not have a constitutional right to litigate civil claims

8  unrelated to direct criminal appeals, habeas corpus petitions or civil

9  rights litigation.  *Lewis*, 518 U.S. at 354-356.  Plaintiff likewise does not

10  have a constitutionally recognized liberty interest in the prison

11  grievance process or in avoiding transfer between prisons.  *Ramirez*,

12  334 F.3d at 860; *Meachum*, 427 U.S. at 224.  Because Plaintiff has not

13  established Defendants' conduct violated a clearly established

14  constitutional right in claims one and three, the inquiry ends and

15  qualified immunity attaches.  *Saucier*, 533 U.S. at 236; *Aguilera*, 510

16  F.3d at 1167.

17       The Court **RECOMMENDS** finding that Defendants are entitled

18  to qualified immunity on claims one and three to the extent those

19  claims are predicated upon Plaintiff's claims for denial of access to the

20  courts, the denial and cancellation of his grievances and prison transfer.

21       Accordingly, this Court **RECOMMENDS** Defendants Calderon,

22  Dominguez, Erece, Greenwood, Miller, Rivas, Ruiz and Sais are entitled

23  to qualified immunity on Plaintiff's first and third causes of action and

24  be **DISMISSED** from those claims.  Claims one and three survive this

25  Partial Motion to Dismiss as to the Due Process claims for withholding

Plaintiff's legal mail against Defendants Erece, Greenwood, Rivas, Ruiz and Sais, and Plaintiff's retaliation claims against all Defendants except Gervin.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; (2) **GRANTING** Defendants' Partial Motion to Dismiss; and (3) **DISMISSING**:

- Plaintiff's first claim for denial of access to the courts against Defendants Erece, Greenwood, Miller, Rivas, Ruiz and Sais arising out of the withholding of Plaintiff's legal mail which resulted in the dismissal of Plaintiff's state court tort case;

- Plaintiff's second and fourth claims against Defendant Gervin for retaliation arising out of the interview; and

- Plaintiff's third claim for denial of Due Process against Defendants Calderon, Dominguez, Gervin, Miller, Padilla and Sais and arising out of the denial of law library access, denial and cancellation of grievances, property deprivation and prison transfer.

If the Court's recommendations are adopted, the following claims remain **PENDING**:

- Plaintiff's second claim for denial of the right to petition the government for redress of grievances against Defendants Calderon, Dominguez, Greenwood, Miller, Padilla, Rivas and Sais arising from interference with the prison grievance process;

14-cv-2442-WQH-MDD

- Plaintiff's third claim for violation of Due Process against Defendants Erece, Greenwood, Ruiz and Sais arising from the withholding of Plaintiff's legal mail;
- Plaintiff's fourth claim for retaliation against all Defendants, except Gervin, arising from the deprivation of Plaintiff's property, transfer to Tehachapi State Prison, withholding Plaintiff's legal mail and filing false allegations and reports against Plaintiff; and
- Plaintiff's fifth claim requesting the Court exercise supplemental jurisdiction over related state law claims.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **October 30, 2015**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **November 6, 2015**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:   October 7, 2015

Hon. Mitchell D. Dembin
United States Magistrate Judge

27

14-cv-2442-WQH-MDD